Thomas D. Pigott (0062919)
Ted J. McClain (0090081)
Pigott, Ltd.
2620 N. Centennial Road, Unit H
Toledo, Ohio  43617-1800
Phone: (419) 776-4567
Facsimile: (419) 776-4568
Email: tpigott@pigottlaw.com
Email: ted.mcclain@pigottlaw.com

*Attorneys for Plaintiff Bo Lee*
_____/


## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**BO LEE**,                                                Case Number: 3:14-cv-824

    Plaintiff,                                        JUDGE:

vs.

**XUNMING DENG,**

**LIWEI XU,**

**MIDWEST OPTOELECTRONICS, LLC,**

**XL TECHNOLOGY HOLDINGS, LLC,** and

**JOHN DOE DEFENDANTS 1 – 10**

    Defendants.
_____/


## **COMPLAINT**

    Now comes Plaintiff Bo Lee, by and through counsel, as and for his complaint against Defendants and upon information and belief hereby states as follows:

## SUMMARY OF ACTION

This lawsuit emanates from Plaintiff Bo Lee's ownership interest in Midwest Optoelectronics, LLC ("Midwest") a closely held Ohio limited liability company.  In 2009 in return for Four Hundred Thousand Dollars ($400,000.00) Bo Lee became a member of Midwest owning less than one percent (1%) of the company.  Until March 2012, Defendant Xunming Deng was Chief Executive Officer and Chairman of the Board of Xunlight.

Midwest is a holding company whose major asset, prior to the acts of defendants complained of herein, was a fifty-one percent (51%) ownership interest in Xunlight Corporation ("Xunlight").  Xunlight is a manufacturer and marketer of thin film solar panels.

One of Xunlight's assets was a wholly owned subsidiary Xunlight Asia, LLC ("Xunlight Asia").  Xunlight Asia was a holding company which owned two main assets, a license agreement from Xunlight to use and sell certain technologies for the production of thin film solar panels and related equipment in China and a fifty-one percent ownership interest in a Chinese company called Xunlight Kunshan Co. Ltd. ("Xunlight Kunshan"), a Joint Venture company formed between Xunlight and the local government of the City of Kunshan, Jiansu, China.  In 2011 Xunlight Kunshan had an enterprise value appraised at Fifty Million Dollars ($50,000,000.00).

Defendant Xunming Deng and Defendant Lieu Xu are husband and wife and the founders of both Midwest and Xunlight.  Defendants Deng and Xu are the majority owners of Midwest together owning in excess of 85%.  Since Midwest's inception, Defendants Deng and Xu have also been managers, board members and officers of the company with Defendant Deng acting as Chairman of the Board and Chief Operating Officer.  Defendants Deng and Xu have at all times relevant occupied two of the three Board of Manager positions effectuating total control of Midwest.

Based upon their super-majority ownership, their positions as managers and officers, coupled with their complete control of the company, Defendants owed heightened fiduciary duties to Bo Lee as a minority member of Midwest.  Those statutory and common law duties included the duty of care, the duty of loyalty, the duty of good faith and fair dealing, and the duty of disclosure.

In 2011, due to financial issues, management of Xunlight began planning to reorganize its ownership and business structure including negotiating a new round of funding and the possible sale of certain of its assets including Xunlight Asia.

As part of the reorganization, Xunlight began negotiating with Deng on behalf of Midwest for its consent to a restructuring plan that included an infusion of cash from its venture capital minority owners in return for majority ownership and a reduction of Midwest's ownership interest in Xunlight from 51% to just over 5%.  Even though he had been the Chief Operating Officer and President of Xunlight from its inception to March 2012, Defendant Deng was negotiating with Xunlight management on behalf of Midwest relative to this reduction of ownership.

2

Eventually Xunlight with direct participation of Defendant Deng, determined that as part of its restructuring plan it would sell Xunlight Asia. Defendant Deng was presented the opportunity for Midwest to purchase Xunlight Asia. Defendant Deng as Midwest's Chairman of the Board and CEO presented this opportunity to the members of Midwest. Even though he was also the Chairman and CEO of Xunlight Asia, Defendant Deng continued to negotiate with Xunlight management on behalf of Midwest to purchase Xunlight Asia. For a period of months Defendant Deng represented to all parties involved that he was negotiating the purchase of Xunlight Asia on behalf of Midwest.

It is important to note that at the same time Defendant Deng is negotiating on behalf of Midwest with Xunlight management for the purchase of Xunlight Asia, he is also negotiating with them relative to Midwest's reduction in ownership of Xunlight from 51% to 5%.

If, in the end, Midwest had actually purchased Xunlight Asia at a good price and in return for a significantly decreased ownership interest in Xunlight, such a transaction may have resulted in an economic benefit to Midwest. Midwest will never know if the transaction as represented by Defendant Deng would have resulted in a benefit because the transaction represented only *partially* occurred. AS a result of a vote by Deng and Xu, Midwest's ownership percentage of Xunlight did in fact decrease from 51% to approximately 5% significantly reducing the value of Midwest. The sale of Xunlight Asia by Xunlight also occurred. What did not occur was the purchase of Xunlight Asia by Midwest.

**Instead of Midwest purchasing Xunlight Asia as continuously represented by Deng, in the eleventh hour and without the knowledge of Bo Lee or other members of Midwest, Xunlight Asia was actually purchased for only one millions dollars ($1,000,000.00) by a company wholly owned and controlled by Defendants Deng and Xu.**

Prior to, during and subsequent to Defendants Deng and Xu's personal purchase of Xunlight Asia, Plaintiff Lee requested that information including the actual deal structure and financing source pertaining to the transaction be disclosed, and that Plaintiff Lee and/or Midwest be offered an opportunity to participate in the purchase of Xunlight Asia as previously represented. Defendant Deng declined all requests of Plaintiff Lee and failed to provide any information relative to the transaction. In contravention of prior representations Defendant Deng did not allow Plaintiff Lee to participate in the purchase transaction or in the ownership of the purchasing entity.

As of the filing of this Complaint Plaintiff Lee is uncertain as whether or not the other directors of Midwest were complacent in the acts and omissions of Defendants Deng and Xu, including whether or not they ratified the sale transaction or forgo the purchase of Xunlight Asia, whether or not they were provided or failed to request sufficient information from which they could prudently determine that the Xunlight Asia transaction would or would not be in the best interest of Midwest or its members, and whether or not they concealed certain facts from and falsely represented Xunlight Asia's value to other members of Midwest. Discovery in this litigation has not begun, but if such matters are discovered, Plaintiff Lee will seek leave to amend his Complaint to add such individuals as party defendants.

Due to their acts, omissions and concealments Defendants Deng and Xu have caused significant damage to Bo Lee, at a minimum committing a fraud upon him, while also breaching their fiduciary duties by usurping an opportunity that was rightfully, legally and represented to be, for the advantage of Midwest, all for their own financial gain and benefit, while at the same time consenting to a decrease of Midwest's ownership of Xunlight from 51% to 5%.

## PARTIES

1.      Plaintiff Bo Lee is an individual of the state of Colorado (hereinafter referred to as "Bo Lee", "Plaintiff" or "Plaintiff Lee").

2.      Defendant Xunming Deng is an individual of legal age residing at all times pertinent at the address as set forth in the caption hereto (hereinafter referred to as "Defendant Deng").

3.      Defendant Liwei Xu is an individual of legal age residing at all times pertinent at the address as set forth in the caption hereto (hereinafter referred to as "Defendant Xu").

4.      Defendants Deng and Xu are respectively husband and wife.

5.      Defendant Midwest Optoelectronics, LLC is an Ohio limited liability company whose statutory agent as on file with the Ohio Secretary of State's Office is as set forth in the caption hereto (hereinafter "Defendant Midwest").

6.      Defendant Midwest maintains its principal place of business within Lucas County, Ohio.

7.      Defendant XL Technology Holdings, LLC is an entity established in the British Virgin Islands, is owned by Defendants Deng and Xu and has an office as set forth in the caption hereto (hereinafter "Defendant XL Technology").

8.      John Doe Defendants are currently unknown individuals and entities believed to have participated in and/or facilitated the acts, omissions and concealments complained of herein resulting in damage to Bo Lee.  The identity of the John Doe Defendants should be revealed through the extensive discovery process to be conducted in this matter and once identified Plaintiff intends to amend his complaint naming such individuals and entities that they may be served with a summons and complaint in the matter.

## JURISDICTION

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as the matters exceeds the sum of $75,000.00 and is between citizens of different states.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as Defendants Deng, Xu and Midwest are residents of this judicial district and a substantial part of the events and omissions giving rise to the claims alleged occurred herein.

## FACTUAL ALLEGATIONS

**Midwest/Xunlight History**

11.     Defendants Deng and Xu are, or were, employed by the University of Toledo as professors in the Department of Physics.

12.     Over a period of years Defendant Deng developed certain technologies related to the development and production of thin film solar panels.

13.     As part of his contract with the University of Toledo any technologies developed by Defendant Deng are required to be assigned to the University of Toledo.

14.     Over a period of years Defendant Deng assigned certain technologies he developed to the University of Toledo, including but not limited to technologies that were afforded issued patent status and protection under United States patent law.

15.     Most, if not all, of the technologies assigned to the University of Toledo by Defendant Deng were then licensed for use and other purposes, including but not limited to the ability to sublicense, by the University of Toledo to Defendant Deng and/or entities owned and/or controlled by Defendant Deng.

16.     A purpose of Defendant Midwest was to be a licensee of certain technologies developed by Defendant Deng and assigned to the University of Toledo.

17.     Defendant Midwest did become a licensee of certain technologies from the University of Toledo.

18.     Defendant Midwest then sublicensed the technology to an entity which later became known as Xunlight Corporation.

19.     Another purpose of Defendant Midwest was to be a holding company for the ownership of Xunlight Corporation.

20.     At all times pertinent hereto Defendant Deng was a majority owner of Defendant Midwest owning more than 61% of the companies membership units issued and outstanding.

21.     At all times pertinent hereto Defendant Deng along with his wife Defendant Xu together owned more than 85% of Defendant Midwest's membership units issued and outstanding.

22.     At all times pertinent hereto Defendants Deng and Xu were managers of Defendant Midwest.

23.     At all times pertinent hereto Defendants Deng and Xu were two of only three managers of Defendant Midwest.

24.     At all times pertinent hereto Defendants Deng and Xu were officers of Defendant Midwest.

25.     At all times pertinent hereto and for all practical purposes Defendants Deng and Xu controlled and directed the business of Defendant Midwest.


**Investment in Midwest by Bo Lee**

26.     For a period from at least the year 2006 through 2007 Defendants Deng and Xu in an effort to raise funds on behalf of Defendant Midwest solicited loans and/or investments from individuals.

27.     One method utilized by Defendant Deng was to enter into convertible note transactions with individuals whereby the individual would provide funds directly to Defendant Deng who in return would provide the investor with a two year convertible promissory note.

28.     A typical feature of the transaction was that the note could be converted into a stated number of units of Defendant Midwest at the option of either Defendant Deng or the investor/note holder.

29.     The units utilized for conversion were from the pool of those owned by Defendant Deng.

30.     Another typical feature of the convertible promissory notes was that they could be redeemed, or paid off, at the option of Defendant Deng.

31.     On or about December 6, 2007, Plaintiff Lee entered into a loan agreement and promissory note with Defendant Deng for a two year term in the amount of Four Hundred Thousand Dollars ($400,000.00) a copy of which is attached hereto as "Exhibit A" and fully incorporated herein by this reference (the "Note").

32.     Prior to its termination Defendant Deng exercised his option to convert the Note into 64,615 membership units of Defendant Midwest.

33.     Other individuals had also entered into similar loan agreements on similar terms with Defendant Deng.

34.     Some, if not all, of these other note holders were redeemed instead of being converted to Defendant Midwest membership units by Defendant Deng.

6

35.     Defendant Deng chose to redeem instead of convert these other individuals investments based upon their familial, personal or business relationship with him.

36.     After the conversion of his note into units Bo Lee later received an additional 15,000 membership units for a total of 79,615 units which represents ownership of 0.71% of the units issued and outstanding.

**Involved Entities and Xunlight Reorganization**

37.     The entities involved in the transactions complained of herein are as follows:

(A) Midwest Optoelectronics, LLC, ("Midwest") - an Ohio limited liability company organized 1/22/2002, Defendant Deng owns in excess of 65% and is a manager and Chief Executive Officer, Defendant Xu is a manager and officer.  Midwest owned 51% of Xunlight until its reorganization.

(B) Xunlight Corporation ("Xunlight") - a Delaware corporation formed 5/1/2007, owned 100% Xunlight Asia.  Defendant Deng was Chief Executive Officer and President until March 2013, Defendant Xu was an officer.

(C) Xunlight Asia, Limited ("Xunlight Asia") - Hong Kong formed entity, was a sublicensee of the Technology from Xunlight originally for the territory of China.

(D) Xunlight Kunshan Co., Ltd. ("Xunlight Kunshan") - formed in the Peoples' Republic of China and is a joint venture company owned 51% by Xunlight Asia and 49% by Chinese partners KSND and Gouke Ventures.  The company was intended to be a manufacturer of equipment and solar panels under the Xunlight sublicense to Xunlight Asia.

(E) XL Technology Holdings, Ltd. - formed in the British Virgin Islands, wholly owned by Defendant Deng and his family.

**Xunlight Establishes Business Relationships in China**

38.     At some point between 2006 and 2008 Xunlight management determined that it wished to establish business relationships and/or facilities in the Peoples' Republic of China.

39.     Xunlight formed Xunlight Asia, Limited in Hong Kong to facilitate completion of its expansion plans.

40.     Xunlight owned 100% of Xunlight Asia until October 2012.

41.     For all times pertinent while owned by Xunlight, Defendant Deng was Xunlight Asia's Chairman and CEO.

7

42.     Defendant Deng as President and CEO of Xunlight enlisted Plaintiff Lee to provide consultation and advisory services to assist in the development of its business interests in China.

43.     Plaintiff Lee successfully assisted Defendant Deng in procuring significant business relationships in China including establishing strategic alliances and obtaining funding.

44.     Through the assistance and insistence of Plaintiff Lee, Xunlight obtained direct and/or indirect funding facilities from its local business partner Kunshan City Government and investment arm Kuoke Ventures.

45.     To facilitate their business plans and interests Xunlight Asia and its Chinese counterparts entered into a joint venture entity formed in the Peoples' Republic of China named Xunlight Kunshan Co. Ltd. ("Xunlight Kunshan").

46.     Prior to its sale in 2012, Xunlight Kunshan was owned 51% by Xunlight Asia and 49% by the Chinese companies.

**Xunlight Encounters Financial Difficulties and Decides to Reorganize**

47.     Xunlight began experiencing financial difficulties and in response began to develop potential solutions including a reorganization of its corporate and financing structure along with divestiture of some of its assets.

48.     Defendant Deng was instrumental in formulating and later accepting Xunlight's plan of reorganization.

49.     In addition to Midwest the minority owners of Xunlight included a group of venture capitalists.

50.     During the reorganization process the venture capitalists wanted to provide additional cash to Xunlight in return for receiving a greater share of ownership.

51.     The venture capitalists worked on this restructuring plan in cooperation with Xunlight's management team (together hereafter referred to as "Xunlight Management")

52.     Xunlight Management began negotiating with Defendant Deng in his capacity as board member and officer of Midwest relative to the proposed restructuring plans.

53.     A major part of Xunlight Management's restructuring plan was that in return for an infusion of cash the venture capitalists would receive a greater percentage ownership interest in Xunlight.

54.     The increase in the venture capitalists interest would be to a majority ownership position while at the same time substantially decreasing the ownership position of Midwest from 51% to 5%.

**Xunlight Decides to Sell Xunlight Asia**

55.     As a part of its reorganization, and as a part of a package of compensation to Midwest for its reduced ownership in Xunlight, Xunlight Management eventually made a decision to divest itself from its business interests in China and originally planned to sell its 51% ownership in Xunlight Kunshan.

56.     Due to timing issues and upon the request of Defendant Deng, Xunlight decided instead of selling its interest in Xunlight Kunshan it would sell its 100% ownership of Xunlight Asia.

57.     Xunlight Management agreed to Defendant Deng's request that Midwest purchase Xunlight Asia.

58.     Defendant Deng as the managing member of the Board of Managers presented this opportunity to the members of Midwest.

59.     Xunlight Management initially offered to sell Midwest Xunlight Asia for just over two million dollars ($2,000,000.00).

60.     Defendant Deng represented to Bo Lee and others that Xunlight Asia had had an enterprise value of fifty Million Dollars ($50,000,000.00) (see "Exhibit B" attached hereto and fully incorporated herein by this reference).

61.     From the beginning of negotiations for the sale and purchase of Xunlight Asia Defendant Deng represented to Bo Lee and others that he was negotiating the purchase on behalf of Midwest (see "Exhibits C, D, E and F" attached hereto and fully incorporated herein by this reference).

62.     As part of the negotiations Xunlight Management provided drafts of legal documents naming Midwest as the purchaser.

63.     As part of the negotiations Defendant Deng successfully negotiated for a change in the territorial rights under the sublicense agreement between Xunlight and Xunlight Asia.

64.     Defendant Deng also successfully negotiated a decreased purchase price for Xunlight Asia by more than one million dollars.

65.     Upon information and belief Defendant Deng through negotiations also successfully eliminated the need to have the million dollars available at the closing of the transaction and instead entered into a promissory note with Xunlight for the purchase price to be provided later.

66.     Upon information and belief Defendant Deng through his negotiations was able to purchase Xunlight Asia without having to provide any cash payment at closing, or even having to borrow funds to complete the transaction, and instead utilized the purchase transaction and future operations and assets of Xunlight Asia to provide the purchase price payment at a later date.

9

**Results of Deng's Negotiations**

67. On August 21, 2012 Bo Lee received an email message along with a memorandum from Midwest's Board of Managers that the board was going to vote the following day to consent to the reorganization plan of Xunlight Management (see "Exhibit G" attached hereto and fully incorporated herein by this reference).

68. In response Bo Lee provided to Defendant Deng an email stating that he would vote in opposition to consenting to Xunlight Management's reorganization plan as not being in the best interest of the members of Midwest and the company (see "Exhibit H" attached hereto and fully incorporated herein by this reference).

69. On August 22, 2012, the Board of Managers of Midwest, including Defendants Deng and Xu, voted to accept the reorganization plan of Xunlight Management and consented to a decrease in its ownership from 51% to 5% upon a pre-reorganization value for Xunlight of only one million dollars ($1,000,000.00) resulting in an a post-reorganization value of Midwest's ownership of approximately Fifty Thousand Dollars ($50,000.00).

70. On October 14, 2012, Bo Lee received an email from Defendant Xu on behalf of the Board of Managers of Midwest representing that the board was supporting the restructuring of Xunlight, including the reduction in ownership by Midwest, and that the financings related thereto would occur the following day October 15, 2012(see "Exhibit I" attached hereto and fully incorporated herein by this reference).

71. It should be noted that the October 14, 2012 email from Defendant Xu makes no mention of the transaction whereby Midwest was to purchase Xunlight Asia.

72. After October 14, 2012 communications to Bo Lee from Defendant Deng and Midwest ceased.

73. For the period of time from October 14, 2012, through December 2012, Plaintiff Lee attempted to contact Defendant Deng relative to the reorganization and purchase of Xunlight Asia to no avail.

74. On December 16, 2012, Defendant Deng finally responded by email to Plaintiff Lee's requests for information regarding the Xunlight Asia purchase by providing a copy of the Equity Interest Purchase Agreement between Xunlight and XL Holdings, Ltd. the entity wholly owned by Defendant Deng and his family (see "Exhibit J" attached hereto and fully incorporated herein by this reference).

75.     It was at that time that Bo Lee was made aware that Defendants Deng and Xu had in fact purchased Xunlight Asia from Xunlight as part of the restructuring deal reducing Midwest's ownership interest, without his knowledge and in direct contravention to the representations made by Defendant Deng that he was negotiating with Xunlight Management on behalf of Midwest.

**Deng Appointed Bo Lee Director of XL Technology Holdings**

76.     In his capacity as owner/member and President of XL Technology Defendant Deng on August 22, 2012, the same day as the vote by Midwest's Board of Managers, appointed Bo Lee Director of the company (see "Exhibit K" attached hereto and fully incorporated herein by this reference).

77.     In conjunction with his appointment as Director, Defendant Deng represented to Bo Lee that he would receive an ownership interest in XL Technology.

78.     Though he was appointed Director of XL Technology, Bo Lee never had any involvement in, or even knowledge of, Defendant Deng and XL Technology's negotiations for the purchase of Xunlight Asia.

79.     Defendant Deng never followed through on his promise of providing an ownership interest in XL Technology to Bo Lee.

**Valuation Cover-up**

80.     Midwest solicited Lee's investment based upon a valuation represented by Midwest to be approximately $65 million.

81.     After providing his investment funds, Midwest issued Lee his units based upon a valuation of the company at $100 million thereby shorting Lee approximately 15,000 membership units.

82.     This is the valuation represented and provided to the investors in the "series B" round of financing.

83.     Upon discovery of this discrepancy, Deng stated that he would have to cover up this mistake so that the other investors did not become aware of these facts.

84.     Deng was concerned that if other investors became aware of these facts, they would also be entitled to the benefit of the same valuation.

85.     Deng on behalf of Midwest concocted a secret plan to issue Lee the units that he was entitled to but to make it appear that the units were being issued in return for consulting services instead of a settlement of Midwest's error.

86.     Deng represented to Lee that the only method available for Midwest to issue the correct number of membership units was to enter into a consulting agreement providing for the additional units to be issued to Lee over a short period of time and to make it appear that the "additional" units were payment for consulting services (a copy of the "Advisory Agreement" is attached hereto and fully incorporated herein as "Exhibit L").

87.     Lee accepted the agreement as the only method to receive the correct number of membership units in return for his investment.

88.     Deng on behalf of Midwest represented that Lee would not have to actually provide any consulting services.

89.     Lee provided guidance, advice and counsel to both Deng and Midwest but not as a direct result or obligation of the Advisory Agreement.

90.     Lee began decreasing his provision of guidance, advice and counsel to Deng and Midwest in approximately mid-2011 and ceased such activities fully in 2012.

91.     The Advisory Agreement lapsed due to non-use and the passage of time at some point prior to January 2014.

92.     Midwest committed a material breach of the Advisory Agreement prior to July 2012.

**Unilateral Abandonment of the Hydrogen Market**

93.     Based upon certain technology developed by Deng, Midwest had invested heavily in pursuing the development of this technology in relations to the hydrogen energy market.

94.     Midwest had obtained significant revenues from a United States Department of Defense contract relative to the development of this technology.

95.     In 2013, Deng unilaterally and without the required consent of the members, decided that Midwest would abandon the pursuit of the technology in the hydrogen market and abandon the Department of Defense contract all to the detriment of Midwest and the members.

96.     Deng may be pursuing the development of this technology, the contract with the Department of Defense and/or other contracts outside of Midwest and for his own personal benefit.

**Conflicts and Duties Owed**

97.     Upon becoming a member of Midwest, Bo Lee became a party to the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011 (a copy of which is attached hereto and fully incorporated herein by this reference as "Exhibit M").

98.     By his ownership and status as a manager and/or officer of several of the entities involved in the reorganization of Xunlight, the substantial decrease in in Midwest's ownership interest in Xunlight and the purchase/sale of Xunlight Asia, there existed inherent conflicts of interest that Defendant Deng chose to ignore and failed to disclose.

99.     Defendant Deng failed to disclose to Plaintiff Lee and others these inherent conflicts of interest.

100.    Defendant Deng misrepresented to Bo Lee and others that he was negotiating on behalf of Midwest to purchase Xunlight Asia.

101.    Defendant Deng misrepresented to Bo Lee and others certain financial and other information of Xunlight Asia to make it appear that Midwest's purchase of Xunlight Asia did not make financial sense.

102.    Defendants Deng and Xu never disclosed to Bo Lee or Midwest their intent to purchase Xunlight Asia through Defendant XL Technology.

103.    In their capacity as managers and officers of Midwest, Defendants Deng and Xu failed to adequately investigate other methods of providing financing to Xunlight in order to maintain Midwest's percentage ownership in Xunlight.

104.    In their capacities as majority members, managers and officers of Midwest, Defendants Deng and Xu failed to adequately and fully provide relevant information to Plaintiff Lee and others relative to the Xunlight reorganization and Midwest's options related thereto.

105.    In their capacities as majority members, managers and officers of Midwest, Defendants Deng and Xu misrepresented to Bo Lee and Midwest certain material information relative to the Xunlight reorganization.

106.    In their capacities as majority members, managers and officers of Midwest, Defendants Deng and Xu concealed from Bo Lee and Midwest certain material information relative to the Xunlight reorganization.

107.    In their capacities as majority members, managers and officers of Midwest, Defendants Deng and Xu misrepresented to Bo Lee and Midwest certain material information relative to the purchase of Xunlight Asia.

108.    In their capacities as majority members, managers and officers of Midwest, Defendants Deng and Xu concealed from Bo Lee and Midwest certain material information relative to the purchase of Xunlight Asia.

109.    Midwest

(A) As of October 2012 Midwest had only eleven (11) members;

13

(B) Defendants Deng and Xu own in excess of 85% of the Midwest;

(C) At all pertinent times Midwest has been managed by a three member board of managers consisting of Defendants Deng and Xu and one other;

(D) There is no public market for membership interests of Midwest;

(E) At all pertinent times Defendants Deng and Xu have exercised control over all business operations of Midwest;

(F) Midwest is therefore a closely held company.

110. As majority members of Midwest Defendants Deng and Xu owed fiduciary duties to Plaintiff Lee.

111. As managers of Midwest Defendants Deng and Xu owed fiduciary duties to Plaintiff Lee.

112. As officers of Midwest Defendants Deng and Xu owed fiduciary duties to Plaintiff Lee.

113. As majority members, managers and/or officers of Midwest Defendants Deng and Xu owed heightened fiduciary duties to Plaintiff Lee.

114. Defendants Deng and Xu breached their fiduciary duties to Plaintiff Lee.

115. As set forth herein Defendants Deng and Xu usurped an opportunity of Midwest for their own benefit.

116. As set forth herein Defendants Deng and Xu usurped an opportunity of Bo Lee for their own benefit.

117. Plaintiff Lee justifiably replied upon the representations of Defendants.

118. Defendants acted with malice.

119. Defendants acted with actual knowledge.

120. Defendants' acts and omissions were completed recklessly.

121. Defendants' acts and omissions were wanton and willful.

122. If any claim hereunder is determined to be a derivative action, Bo Lee states the following:

(A) If so determined by the Court he will proceed upon behalf of Midwest to recover a judgment in its favor;

(B) The management of Midwest is not reserved to its members;

(C) He was a member of Midwest at the time of the transaction(s) of which he complains;

(D) He was a member at the time of bringing this action;

(E) He made no effort to secure commencement of the action(s) by the managers of Midwest as those efforts would most likely not succeed;

(F) He did not make an effort to secure commencement of the action(s) by the managers of Midwest as:

    i.  The managers are also individual defendants hereunder and would most likely not commence an action against themselves;

    ii.  The managers who are individual defendants hereunder are two of three managers of Midwest and therefore control the voting of the board of managers;

    iii.  The managers who are individual defendants hereunder did not refrain from voting in matters where an inherent conflict of interest occurred as described herein and most likely would not abstain as to commencing an action against themselves;

    iv.  The managers who are individual defendants hereunder own more than 85% of Midwest and effectively control the company.

## FIRST CLAIM FOR RELIEF
### Breach of the Fiduciary Duty of Care Owed to Bo Lee
### As to Defendants Deng, Xu and John Does

123.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

124.    Bo Lee states that Midwest is a closely held company.

125.    Bo Lee states that Defendants Deng, Xu and John Does were members, managers, board members and/or officers of Midwest.

126.    Bo Lee states that Defendant Deng was the majority member of Midwest.

127.    Bo Lee states that Defendant Deng, Xu and John Does controlled Midwest.

128.    Bo Lee states that based upon the foregoing ownership, control, positions and offices held there existed a fiduciary relationship between him and Defendants Deng, Xu and John Does.

129.    Bo Lee states that based upon this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee the fiduciary duty of care.

130.    Bo Lee states that based upon the specifics of this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee a heightened fiduciary duty of care.

131.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does failed to observe the fiduciary duties owing Bo Lee.

132.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does breached the fiduciary duties owing Bo Lee.

133.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' breach of their fiduciary duty of care owed to him, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## SECOND CLAIM FOR RELIEF
### Breach of the Fiduciary Duty of Loyalty Owed to Bo Lee
### As to Defendants Deng, Xu and John Does

134.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

135.    Bo Lee states that Midwest is a closely held company.

136.    Bo Lee states that Defendants Deng, Xu and John Does were members, managers, board members and/or officers of Midwest.

137.    Bo Lee states that Defendant Deng was the majority member of Midwest.

138.    Bo Lee states that Defendant Deng, Xu and John Does controlled Midwest.

139.    Bo Lee states that based upon the foregoing ownership, control, positions and offices held there existed a fiduciary relationship between him and Defendants Deng, Xu and John Does.

140.    Bo Lee states that based upon this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee the fiduciary duty of loyalty.

141.    Bo Lee states that based upon the specifics of this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee a heightened fiduciary duty of loyalty.

142.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does failed to observe the fiduciary duties owing Bo Lee.

143.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does breached the fiduciary duties owing Bo Lee.

144.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' breach of their fiduciary duty of loyalty owed to him, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## THIRD CLAIM FOR RELIEF
### Breach of the Fiduciary Duty of Good Faith and Fair Dealing Owed to Bo Lee
### As to Defendants Deng, Xu and John Does

145.    Plaintiff by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

146.    Bo Lee states that Midwest is a closely held company.

147.    Bo Lee states that Defendants Deng, Xu and John Does were members, managers, board members and/or officers of Midwest.

148.    Bo Lee states that Defendant Deng was the majority member of Midwest.

149.    Bo Lee states that Defendant Deng, Xu and John Does controlled Midwest.

150.    Bo Lee states that based upon the foregoing ownership, control, positions and offices held there existed a fiduciary relationship between him and Defendants Deng, Xu and John Does.

151.    Bo Lee states that based upon this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee the fiduciary duty of good faith and fair dealing.

152.    Bo Lee states that based upon the specifics of this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee a heightened fiduciary duty of good faith and fair dealing.

153.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does failed to observe the fiduciary duties owing Bo Lee.

154.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does breached the fiduciary duties owing Bo Lee.

155.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' breach of their fiduciary duty of good faith and fair dealing owed to him, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

### FOURTH CLAIM FOR RELIEF
### Breach of the Fiduciary Duty of Disclosure Owed to Bo Lee
### As to Defendants Deng, Xu and John Does

156.     Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

157.     Bo Lee states that Midwest is a closely held company.

158.     Bo Lee states that Defendants Deng, Xu and John Does were members, managers, board members and/or officers of Midwest.

159.     Bo Lee states that Defendant Deng was the majority member of Midwest.

160.     Bo Lee states that Defendant Deng, Xu and John Does controlled Midwest.

161.     Bo Lee states that based upon the foregoing ownership, control, positions and offices held there existed a fiduciary relationship between him and Defendants Deng, Xu and John Does.

162.     Bo Lee states that based upon this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee the fiduciary duty of disclosure.

163.     Bo Lee states that based upon the specifics of this fiduciary relationship Defendants Deng, Xu and John Does owed Bo Lee a heightened fiduciary duty of disclosure.

164.     Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does failed to observe the fiduciary duties owing Bo Lee.

165.     Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does breached the fiduciary duties owing Bo Lee.

166.     Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' breach of their fiduciary duty of disclosure owed to him, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

### FIFTH CLAIM FOR RELIEF
### Breach of Majority Members' Fiduciary Duty Owed to Bo Lee
### As to Defendants Deng, Xu and John Doe Defendants

167.     Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

168.    Bo Lee is a minority member of Midwest owning less than one percent (1%) of the company's membership units.

169.    Defendants Deng and Xu together own in excess of eighty-five percent (85%) of the membership units of Midwest.

170.    Bo Lee states that Defendants Deng and Xu, along with John Doe Defendants who may be members of Midwest acting together would own in excess of eighty-five percent (85%) of the membership units of Midwest.

171.    As majority members of Midwest Defendants Deng, Xu, and John Doe Defendants as majority members owe a fiduciary duty to Bo Lee and the other members of Midwest, to avoid business conduct that harms their minority financial interests in Midwest.

172.    As set forth herein, Defendants Deng, Xu, and John Doe Defendants misused their majority power to promote and act in their own personal interests, and to oppress Bo Lee's and the other minority members' interests, and/or commit fraud upon them and their rights.

173.    The acts and omissions of Defendants Deng, Xu, and John Doe Defendants harmed the financial interests of Bo Lee and the other minority members of Midwest.

174.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu, and John Doe Defendants breach of their fiduciary duty as majority members owed to him, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).


### SIXTH CLAIM FOR RELIEF
### Breach of Fiduciary Duties Owed to Midwest
### As to Defendants Deng, Xu and John Doe Defendants

175.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

176.    Bo Lee states that Defendants Deng, Xu and John Does were members, managers, board members and/or officers of Midwest.

177.    Bo Lee states that Defendant Deng was the majority member of Midwest.

178.    Bo Lee states that Defendant Deng, Xu and John Does controlled Midwest.

179.    Bo Lee states that based upon the foregoing ownership, control, positions and offices held there existed a fiduciary relationship between Midwest and Defendants Deng, Xu and John Does.

180.    Bo Lee states that based upon this fiduciary relationship Defendants Deng, Xu and John Does owed Midwest certain fiduciary duties.

181.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does failed to observe the fiduciary duties owing Midwest.

182.    Bo Lee states that based upon the facts plead herein, and those to be developed through the discovery process, Defendants Deng, Xu and John Does breached the fiduciary duties owing Midwest.

183.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' breach of their fiduciary duties owed to Midwest, Midwest has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## SEVENTH CLAIM FOR RELIEF
### Fraud
### As to Defendants Deng, Xu and John Doe Defendants

184.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

185.    Defendants Deng, Xu and John Does made false representations of fact to Bo Lee with knowledge that such representations were false when made.

186.    The representations made by Defendants Deng, Xu and John Does were material to the transactions at issue herein.

187.    The representations made by Defendants Deng, Xu and John Does were made with the intent of misleading Bo Lee into relying upon them.

188.    Bo Lee was justified in relying upon the representations of Defendants Deng, Xu and John Does.

189.    Bo Lee relied upon the representations of Defendants Deng, Xu and John Does.

190.    Defendants Deng, Xu and John Does concealed certain facts from Bo Lee relative to the transactions at issue herein.

191.    Defendants Deng, Xu and John Does had a duty to disclose those facts.

192.    The facts concealed by Defendants Deng, Xu and John Does were material to the transactions at issue herein.

193.    The concealments by Defendants Deng, Xu and John Does were made with the intent of misleading Bo Lee into relying upon them.

194.    Bo Lee was justified in relying upon the concealment by Defendants Deng, Xu and John Does.

195.    Bo Lee relied upon the concealment of Defendants Deng, Xu and John Does.

196.    Bo Lee has been damaged with the damage proximately caused by his reliance upon the representations of Defendants Deng, Xu and John Does.

197.    Bo Lee has been damaged with the damage directly caused by his reliance upon the representations of Defendants Deng, Xu and John Does.

198.    Bo Lee has been damaged with the damage proximately caused by his reliance upon the concealments of Defendants Deng, Xu and John Does.

199.    Bo Lee has been damaged with the damage directly caused by his reliance upon the concealments of Defendants Deng, Xu and John Does.

200.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' commission of fraud upon him, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

201.    Bo Lee states that as a consequence of Defendants Deng, Xu and John Does' commission of fraud upon him, he is entitled to punitive damages.


## EIGHTH CLAIM FOR RELIEF
### Misrepresentation
### As to Defendants Deng, Xu, John Does and Midwest

202.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

203.    Defendants Deng, Xu and John Does made certain misrepresentations in their individual capacities as well as in their capacities as managers, members and officers of Midwest.

204.    Bo Lee justifiably relied upon these representations.

205.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Doe's misrepresentations, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).


## NINTH CLAIM FOR RELIEF
### Violation of Ohio Revised Code §1705.01 et seq.
### As to Defendants Deng, Xu and Midwest

206.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

207.    Defendants Deng and Xu as managers of Midwest, and Midwest are obligated to provide certain information to a member upon reasonable notice pursuant Ohio Revised Code §1705.01 et seq.

208.    Bo Lee as a member reasonably requested certain information that Defendants Deng, Xu and Midwest were required to provide per contract.

209.    Defendants Deng, Xu and Midwest failed to provide such information and therefore are in violation of Ohio Revised Code §1705.01 et seq.

210.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and Midwest's violations of Ohio Revised Code §1705.01 et seq., he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## TENTH CLAIM FOR RELIEF
### Negligence

### As to Defendants Deng, Xu and John Does

211.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

212.    In their capacities as managers, members and/or officers of Midwest, Defendants Deng, Xu and John Does failed to use reasonable and/or ordinary care in the management of the company and in representations related to the restructuring of Xunlight.

213.    In their capacities as managers, members and/or officers of Midwest, Defendants Deng, Xu and John Does failed in their fiduciary duties in the management of the company and in representations related to the restructuring of Xunlight.

214.    Defendants Deng, Xu and John Does negligence constitutes willful and/or wanton misconduct in the acts and omissions.

215.    Defendants Deng, Xu and John Does knew or should have known that their negligence would cause injury to Bo Lee.

216.    Defendants Deng, Xu and John Does knew or should have known that their negligence would cause injury to Midwest.

217.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' negligence, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

218.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Does' negligence, Midwest has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## ELEVENTH CLAIM FOR RELIEF
### Breach of Contract
### As to Defendants Deng, Xu and Midwest

219.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

220.    Bo Lee states that as a member of Midwest he is a party to the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011.

221.    Bo Lee states the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011 is a written contract between himself, Midwest and the other members of Midwest.

222.    Defendants Deng and Xu as managers of Midwest, and Midwest are obligated to provide certain information to a member upon reasonable notice pursuant the terms of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011.

223.    Bo Lee as a member reasonably requested certain information that Defendants Deng, Xu and Midwest were required to provide per contract.

224.    Defendants Deng, Xu and Midwest failed to provide such information and therefore breached the contract with Bo Lee.

225.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and Midwest's breach of the contract, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## TWELFTH CLAIM FOR RELIEF
### Breach of Contract
### As to Defendants Deng, Xu and Midwest

23

226.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

227.    Bo Lee states that as a member of Midwest he is a party to the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011.

228.    Bo Lee states the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011 is a written contract between himself, Midwest and the other members of Midwest.

229.    Defendants Deng and Xu as managers of Midwest, and Midwest are obligated to abide by the terms and conditions of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011.

230.    A term and condition of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, is that certain actions require the approval of the members of Midwest prior to Midwest or its managers taking action or obligating the company thereupon.

231.    As set forth in §4.4 of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, action shall be taken by the Company or its manager only after obtaining the approval of the members for "(c) selling or transferring all or substantially all of the assets of Company (other than in the ordinary course of business) and/or dissolving the Company;".

232.    The board of managers on behalf of Midwest voted, without receiving the approval of the members pursuant to §4.4 of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, to consent to the decrease in the percentage ownership of Midwest in Xunlight from approximately 51% to 5%.

233.    Midwest's ownership interest in Xunlight was its most major and substantial asset.

234.    The board of manager's consent to decrease Midwest's ownership interest in Xunlight decreased the value of that holding, the value of Midwest's most major and substantial asset to near valueless constitutes a selling or transferring of substantially all of Midwest's assets.

235.    The board of managers and Midwest's actions constitutes a breach of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011.

236.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and Midwest's breach of the contract, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

**THIRTEENTH CLAIM FOR RELIEF**
**Violation of Ohio Revised Code §1705.01 et seq.**

**As to Defendants Deng, Xu and John Doe Defendants**

24

1705.29

237.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

238.    Defendants Deng, Xu and John Doe Defendants are members and managers of Midwest who were appointed in writing and agreed to serve as managers in writing.

239.    As members and managers of Midwest Defendants Deng, Xu and John Doe Defendants owed certain duties to Midwest and the other members.

240.    As members and managers of Midwest Defendants Deng, Xu and John Doe Defendants are liable in damages for any act they have undertaken, or failed to take and/or any omission they made with deliberate intent to cause injury to the company or which was undertaken with reckless disregard for the best interests of Midwest.


### FOURTEENTH CLAIM FOR RELIEF
### Breach of Contract- Standard of Care
#### As to Defendants Deng, Xu and John Doe Defendants

241.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

242.    Defendants Deng, Xu and John Doe Defendants are managers and/or officers of Midwest.

243.    Pursuant to the §4.5 of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, as managers and/or officers of Midwest Defendants Deng, Xu and John Doe Defendants owed the duty of care to Midwest and its members including Bo Lee.

244.    This standard of care included, but was not limited to, directing "the affairs of the Company prudently and in the best interest of the Company, including the safekeeping and use of all Company funds and assets and the use thereof for the benefit of the Company".

245.    As set forth herein, Defendants Deng, Xu and John Doe Defendants breached the duty of care owed to Midwest and its members.

246.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and Midwest's breach of their duties, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

247.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and Midwest's breach of their duties, Midwest has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## FIFTEENTH CLAIM FOR RELIEF
### Breach of Contract
### As to Defendants Deng and Xu

248.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

249.    Defendants Deng and Xu are managers who also serve as officers of Midwest.

250.    Pursuant to the §4.5 of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, as managers who also serve as officers of Midwest, Defendants Deng and Xu are required to manage Midwest in their sole and exclusive function and may not have other business interests, or employment, or engage in other activities in addition to those relating to Midwest, including providing advice or services to other client or making or managing other investments.

251.    Under information and belief, Defendants Deng and Xu have other business interests, have other employment, and engage in other activities in addition to those relating to Midwest.

252.    Based upon their other interests, employment and activities, Defendants Deng and Xu have breached the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011.

253.    Bo Lee states that as a direct and proximate result of Defendants Deng and Xu's breach of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

254.    Bo Lee states that as a direct and proximate result of Defendants Deng and Xu's breach of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, Midwest has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

## SIXTEENTH CLAIM FOR RELIEF
### Breach of Duties Pursuant to Ohio Revised Code §1705.01 et seq.
### As to Defendants Deng, Xu and John Doe Defendants

255.    Plaintiff Lee incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

256.    Pursuant to their positions as managers and members of Midwest, Defendants Deng, Xu and John Does owed to Midwest and Bo Lee the duty of loyalty, the duty of care and the obligation of good faith.

257.    As set forth herein, Defendants Deng, Xu and John Doe Defendants breached their duty of loyalty, duty of care and the obligation of good faith owed to Midwest and its members including Bo Lee.

258.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Doe Defendants' breach of their duties and obligations, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

259.    Bo Lee states that as a direct and proximate result of Defendants Deng, Xu and John Doe Defendants' breach of their duties and obligations, Midwest has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

260.    As managers and officers of Midwest Defendants Deng, Xu and John Doe Defendants are liable in damages for any action the manager takes or fails to take as a manager for any act or omission undertaken with deliberate intent to cause injury to the company or undertaken with reckless disregard for the best interests of the company.


### SEVENTEENTH CLAIM FOR RELIEF
### <u>Tortious Interference with Economic Relations</u>
### As to Defendants Deng, Xu, John Does and XL Technology Holdings


261.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

262.    There was a prospective business relationship between Midwest and Xunlight whereby Midwest would purchase all of Xunlight's interest in Xunlight Asia.

263.    Defendants Deng, Xu, John Does and XL Technology Holdings knew of the business relationship between Midwest and Xunlight and the purchase/sale of Xunlight Asia.

264.    Defendants Deng, Xu, John Does and XL Technology Holdings acted with purpose and intent to interfere with the business relationship between Midwest and Xunlight.

265.     Defendants Deng, Xu, John Does and XL Technology Holdings usurped for their own financial benefit the opportunities presented by the business relationship between Midwest and Xunlight.

266.     Defendants Deng, Xu, John Does and XL Technology Holdings lacked justification or privilege and therefore their interference was improper.

267.     Bo Lee states that as a direct and proximate result of Defendants Deng, Xu, John Does and XL Technology Holdings' interference with the business relationship between Midwest and Xunlight, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

268.     Bo Lee states that as a direct and proximate result of Defendants Deng, Xu, John Does and XL Technology Holdings' interference with the business relationship between Midwest and Xunlight, Midwest has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).


**EIGHTEENTH CLAIM FOR RELIEF**
**Denial of Indemnification**

**As to Defendants Den, Xu and John Doe Defendants**


269.     Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

270.     Pursuant to §4.7 of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011, Midwest is required to "defend, indemnify and hold harmless the Board of Managers, the Officers, the Majority Owner and respective directors, officers, employees and representatives through which they might act (each and "Indemnitee")  from and against any loss, expense, claims, damage, liability, judgment or injury suffered or sustained by any of them by reason of any of their acts, omissions or alleged acts or omissions arising out of activities on or reasonably believed by such Indemnitee to be in or not opposed to the best interests of the Company or reasonably believed by such Indemnitee to be in furtherance of the best interests of the Company, including but not limited to any judgment, award, settlement, penalty, fine, reasonable attorney's fees and other costs or expenses incurred in connection with the defense or any actual or threatened action, proceeding or claim fi the acts, omission or alleged acts or omission upon which such actual or threatened actions, proceedings or claims are based were not performed or omitted fraudulently or in bad faith by the Indemnitee and were not in violation of the Indemnitee's obligations to the Company or in violation of

an Indemnitee's obligations to avoid receipt of a financial benefit to which such Indemnitee is not entitled and avoid all knowing violations of law. Any such indemnification shall only be from the assets of the Company and may include advances of amounts contemplated under this Section."

271. Bo Lee states that based upon their acts and omissions as set forth herein, Defendants Deng, Xu and John Does are not entitled to, or provided, any right or benefit conferred in §4.7 of the Third Amended and Restated Operating Agreement of Midwest dated August 4, 2011.

## NINETEENTH CLAIM FOR RELIEF
### Respondeat Superior

272. Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

273. Defendants Deng, Xu and John Does were acting within their scope of authority as officers, managers and/or employees of Defendant Midwest when committing the acts and omissions as set forth herein.

274. Defendant Midwest is bound by the acts of its officers, managers and employees acting within the scope of their authority.

275. Any and all acts of Defendants Deng, Xu and John Does were completed in furtherance of their normal employment duties and within the scope of their agency.

276. Defendant Midwest at all times had control, or a right of control, over its officers, managers and employees.

277. Defendant Midwest is liable for the acts or omissions of its officers, managers and employees, including but not limited to fraud, committed within the scope of their employment or agency.

278. Under the theory of respondeat superior, Bo Lee has been damaged by the acts or omissions of Defendants Midwest's officers, managers and employees in an amount in excess of Twenty-five Thousand Dollars ($25,000.00) for which Defendant Midwest is wholly liable.

## TWENTIETH CLAIM FOR RELIEF
### Violations of O.R.C. §1707.01 et seq.
**As to Defendants Deng, Xu, John Does and XL Technology Holdings**

29

279.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

280.    Defendants Deng, Xu and John Does were engaged in the sale of securities as defined by O.R.C. §1707.01 et seq.

281.    Defendant Deng in his individual capacity and upon behalf of Defendants Xu, John Does and XL Technology Holdings made false representations regarding a sale of securities in violation of O.R.C. §1707.01 et seq.

282.    Defendant Deng did make false and fraudulent representations regarding the purchase of Xunlight Asia by Midwest, including but not limited to the written representation that Midwest was to be the purchaser of XL Asia.

283.    Defendant Deng, in his individual capacity, as an officer, manager and member of Midwest and as an officer of XL Asia was involved in the fraudulent and pretended purchase and sale of XL Asia.

284.    Defendants Xu, John Does and XL Technology Holdings participated in the transactions and fraud of Defendant Deng.

285.    The acts and omissions of Defendants Deng, Xu, John Does and XL Technology Holdings constitute violations of O.R.C. §1707.01 et seq.

286.    As a direct and proximate result of Defendants Deng, Xu, John Does and XL Technology Holdings violations of O.R.C. §1707.01 et seq., Bo Lee has been damaged in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

287.    A As a direct and proximate result of Defendants Deng, Xu, John Does and XL Technology Holdings violations of O.R.C. §1707.01 et seq., Midwest has been damaged in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).


### TWENTY-FIRST CLAIM FOR RELIEF
### Civil RICO O.R.C. §2923.31 et seq.

**As to Defendants Deng, Xu, John Doe and XL Technology Holdings**


288.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

289.    Defendants Deng, Xu, John Does and XL Technology Holdings are all persons under Federal, Ohio and common law.

290.     Defendants Deng, Xu, John Does and XL Technology Holdings were employed by or associated with an enterprise as that term is set forth in Ohio Revised Code §2923 et seq.

291.     Defendants Deng, Xu, John Does and XL Technology Holdings conducted or participated in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity set forth herein and as that term is set forth in Ohio Revised Code §2923 et seq.

292.     Defendant Deng controlled the enterprise complained of herein.

293.     Defendants Deng, Xu, John Does and XL Technology Holdings conspired to commit the activities set forth herein.

294.     As a direct and proximate result of Defendants Deng, Xu, John Does and XL Technology Holdings conduct and participation in the affairs of the enterprise, Bo Lee has been damaged in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

295.     As a direct and proximate result of Defendants Deng, Xu, John Does and XL Technology Holdings conduct and participation in the affairs of the enterprise, Midwest has been damaged in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

296.     As a result of Defendants Deng, Xu, John Does and XL Technology Holdings conduct and participation in the affairs of the enterprise, Bo Lee is entitled to treble damages along with all costs of this action including reasonable attorneys' fees.

297.     As a result of Defendants Deng, Xu, John Does and XL Technology Holdings conduct and participation in the affairs of the enterprise, Midwest is entitled to treble damages along with all costs of this action including reasonable attorneys' fees.


## TWENTY-SECOND CLAIM FOR RELIEF
### Civil Conspiracy
### As to Defendants Deng, Xu, John Doe and XL Technology Holdings

298.     Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

299.     Bo Lee claims that Defendants Deng, Xu, John Does and XL Technology Holdings participated in a malicious combination between two or more of them.

300.     Bo Lee claims that as a result of their malicious combination Defendants Deng, Xu, John Does and XL Technology Holdings committed a wrongful and/or unlawful act that caused him injury.

301.   Bo Lee claims that as a result of their malicious combination Defendants Deng, Xu, John Does and XL Technology Holdings committed a wrongful and/or unlawful act that caused Midwest injury.

302.   As set forth herein Bo Lee claims that Defendants Deng, Xu, John Does and XL Technology Holdings damaged him by participating in a civil conspiracy in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

303.   As set forth herein Bo Lee claims that Defendants Deng, Xu, John Does and XL Technology Holdings damaged Midwest by participating in a civil conspiracy in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).


### TWENTY-THIRD CLAIM FOR RELIEF
### Civil Aiding and Abetting

### As to Defendants Deng, Xu, John Does and XL Technology Holdings

304.   Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

305.   Bo Lee states that Defendant Deng engaged in wrongful conduct as set forth herein which injured him.

306.   Bo Lee states that Defendant Deng engaged in wrongful conduct as set forth herein which injured Midwest.

307.   Bo Lee states that Defendants Xu, John Does and/or XL Technology Holdings substantially encouraged or assisted Defendant Deng to accomplish the wrongful conduct.

308.    Bo Lee states that at the time the substantial encouragement or assistance was provided Defendants Xu, John Does and/or XL Technology Holdings had knowledge that Defendant Deng was engaged in some type of wrongdoing.

309.   Bo Lee states that the encouragement or assistance by Defendants Xu, John Does and/or XL Technology Holdings was a substantial factor in causing the wrongful conduct.

310.   Bo Lee states that as a result of the civil aiding and abetting of Defendants Xu, John Does and/or XL Technology Holdings, he has been damaged in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

311.   Bo Lee states that as a result of the civil aiding and abetting of Defendants Xu, John Does and/or XL Technology Holdings, Midwest has been damaged in an amount in excess of Twenty-five Thousand Dollars ($25,000.00).

## TWENTY-FOURTH CLAIM FOR RELIEF
## <u>Breach of Contract</u>

### As to Defendant Midwest

312.    Plaintiff incorporates by reference his allegations contained in the foregoing paragraphs of his Complaint as if fully set forth and restated herein.

313.    Bo Lee states that there existed an Advisory Agreement between himself and Midwest.

314.    Bo Lee states that Midwest materially breached the Advisory Agreement prior to January 2014.

315.    Bo Lee ceased providing guidance, advice and counsel to Deng and Midwest in approximately July 2012.

316.    Bo Lee states that Midwest never requested that he provide any further services pursuant to the Advisory Agreement past July 2012.

317.    Bo Lee states that the Advisory Agreement lapsed due to passage of time prior to January 2014 and thereafter was of no effect upon the parties.

318.    Bo Lee states that as a direct and proximate result of Defendant Midwest's breach of the contract, he has been damaged in an amount in excess of Twenty Five Thousand Dollars ($25,000.00).

[REMAINDER OF THIS PAGE LEFT BLANK]

**WHEREFORE**, Plaintiff Bo Lee prays for judgment in his favor and against Defendants Xunming Deng, Liwei Xu, Midwest Optoelectronics, LLC, John Doe Defendants and XL Technology Holdings, LLC, jointly and severally, as follows:

A.  As to Plaintiff's First through Twenty-Third Claims an amount in excess of Twenty-five Thousand Dollars ($25,000.00);

B.  An award for punitive, special and consequential damages as provided by equity and law;

C.  An award for treble damages as provided by equity and law;

D.  An Order from this Court determining the rights of Midwest hereunder and the obligations of Bo Lee to prosecute Midwest's derivative claims;

E.  An Order from this Court denying Defendants Deng, Xu and John Does any benefits of indemnification, defense or similar rights or protections from Midwest;

F.  An Order from this Court declaring that the Advisory Agreement lapsed and is of no effect;

G.  An award for all costs of this action, including but not limited to, reasonable attorneys' fees;

H.  Any such other legal and equitable relief to which Plaintiffs may be entitled and this court deems just and proper in the circumstances.

Respectfully Submitted:

PIGOTT, LTD.

By: */s/ Thomas D. Pigott*
Thomas D. Pigott (0062919)
Ted J. McClain (0090081)
2620 N. Centennial Road, Unit H
Toledo, Ohio  43617-1800
Phone: (419) 776-4567
Facsimile: (419) 776-4568
Email: tpigott@pigottlaw.com
Email: ted.mcclain@pigottlaw.com

*Attorneys for Plaintiff*

Dated: April 17, 2014

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a jury trial as to all issues so triable within cause.

By: /s/ *Thomas D. Pigott*
Thomas D. Pigott (0062919)